In the Matter of the Application of EUGENE M. DUSINBERRE and NATHAN OAKS, JR., Petitioners, for an Order under Provisions of Civil Practice Act, Article 78, against HOLTON V. NOYES, as Commissioner of Agriculture and Markets of the State of New York, Respondent.

Third Department, March 4, 1942.

*Henry S. Manley*, for the petitioners.

*Milo R. Kniffen* [*Robert G. Blabey* of counsel], for the respondent.

BLISS, J.   The petitioners Dusinberre and Oaks are the owners of farms in the town of Seneca, Ontario county, a short distance outside of the city of Geneva.   They produce Golden Guernsey milk.   For many years previous to September 4, 1940, their milk was sold to a milk dealer in the city of Geneva.   Then they decided to sell their milk in the name of Seneca Guernsey Farms, at the farm of one of them along a State road a short distance outside of the city of Geneva, to customers who would come there to purchase it.   They applied for a milk dealer's license for the year ending March 31, 1941, but it was denied them by the Commissioner.   A review of his determination was had in this court and his determination was reversed and the Commissioner was ordered to issue the license.   (*Matter of Dusinberre* v. *Noyes*, 259 App. Div. 582.)   Upon review by the Court of Appeals, the order of this court was reversed and the determination of the Commissioner was confirmed.   (284 N. Y. 304.)   In May, 1940, immediately after the reversal by this court, the petitioners proceeded with the construction and equipping of a thoroughly modern, attractive and sanitary sales building described by health authorities as a model plant.   This was done upon the advice of their counsel who has testified that he then believed that probably the department would not appeal from the decision of the Appellate Division.   On September 4, 1940, petitioners opened their salesroom to the public and since then have been there selling their Golden Guernsey milk.

In the early part of 1941 petitioners again applied to the Commissioner for a milk dealer's license for the year beginning April 1, 1941, and ending March 31, 1942.   Hearings were had and finally, on October 4, 1941, they were again denied a license.   The Commissioner concluded that it would be contrary to good public policy now to grant a license to the applicants.   We know of no authority in the Commissioner to determine public policy or to refuse a license on the ground of public policy.   Whatever power he has is delegated to him by the Legislature which determines public policy.   (Agric. and Mkts. Law, § 258-c.)   The conclusion that the granting of this license to the applicants would be contrary to good public policy is wholly without consequence and must be disregarded.

The Agriculture and Markets Law provides that a dairy products store shall be exempt from the license requirements of the milk control article (§§ 257, 253) and petitioners now claim exemption under this statute. Petitioners sold Golden Guernsey milk and cream and a chocolate milk drink, all dairy products. Undoubtedly if they had sold a reasonably complete line of dairy products they would have come within the exemption accorded a dairy products store, but the sale of only the milk, cream and chocolate milk is hardly sufficient to make them a dairy products store. Possibly the addition of a few more articles such as butter, cheese or ice cream would have been sufficient. But that is not the present case.

Certain facts established at the hearings stand out. If applicants are ultimately unable to sell their milk at the farm as they now plan, then their milk will again be sold to a dealer in the city of Geneva, so that the grant or denial of this license will not affect the Geneva milk market. There is no other licensed dealer in the town of Seneca. It is uncontradicted in this record that Golden Guernsey milk tests better, looks better and is better than the standard run of milk now being sold in the city of Geneva. As a volunteer medical witness testified without denial: It is a " superior product, which is not available otherwise in our locality." It was sold in bottles sealed with sanitary lip-covered caps. A little over half of petitioners' milk was sold to residents of the city who came there for it. There are only two licensed dealers in the city of Geneva, a city of over 15,000 population, and one of these has no objection to the issuance of this license.

The only reason assigned by the Commissioner for the withholding of this license which is in accord with the evidence is that the applicants had engaged in business in violation of the statute. This was undeniably so. That counsel advised them that no appeal would be taken from the previous decision of this court did not justify their dealing in milk without the proper license. The determination must be confirmed upon this ground if for no other.

The determination and order of the Commissioner should be confirmed, without costs.

CRAPSER and SCHENCK, JJ., concur; HILL, P. J., and HEFFERNAN, J., dissent upon the ground that no license was required as the sales were made at a dairy products store.

Determination and order confirmed, without costs.